MARTIN ROGAN ET AL. v. BOARD OF TRUSTEES FOR THE STATE COLLEGES

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 15—decision released July 31, 1979

*Robert F. McWeeny,* for the appellants (plaintiffs).

*Bernard F. McGovern,* assistant attorney general, with whom were *Charles E. Gooley,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant).

LONGO, J. The defendant, board of trustees for the state colleges, is an agency of the executive department of state government charged with administering the four state colleges, including Eastern Connecticut State College, where the plaintiffs were employed at the Frederick R. Noble School, a "laboratory school" for elementary students on the Eastern campus. General Statutes §§ 10-109a, 10-109b. In this case, the plaintiffs, who attempted to sue the individual members of the board for actions performed by them in their capacities as officials of the state of Connecticut, urge that we overturn settled principles of law and hold that the trial court erred in concluding that the present action was, in reality, a suit against the state and was thus barred by the doctrine of sovereign immunity. We decline to do so.

The plaintiffs requested no finding and the trial court prepared none. We are thus confined in our review to those matters which appear of record, which in this case include only those paragraphs of the complaint which were admitted by the defendant. *Tuite* v. *Tuite,* 150 Conn. 345, 348, 189 A.2d 394; *Mendrochowicz* v. *Wolfe,* 139 Conn. 506, 509, 95 A.2d 260. As the trial court based its decision upon jurisdictional grounds, we include only the following brief factual summary of the pleadings: The plaintiffs brought this action against the defendant board, alleging that it had violated "Personnel Policies of the Board of Trustees for the State Colleges of Connecticut," policies alleged to have been adopted by the board in June, 1975, when the board, inter alia, failed to give notice to the plaintiffs, as required by the personnel policies, of its resolution to discontinue operations of the Noble School on the Eastern Connecticut campus. The plaintiffs also alleged that the termination of their employment deprived them of due process of law. The defendant board answered, and, by way of special defense, asserted that the individual members of the board were being sued in their official capacities as members of a state board relative to acts alleged by the plaintiffs to be within the scope of their statutory duties, that the action was thus a suit against the state, and that the state, not having consented to such a suit, was immune from suit. As we have indicated, the trial court agreed, rendered judgment for the defendants, and the plaintiffs have appealed.

Dispositive of this appeal is the special defense filed by the board alleging that the plaintiffs' suit was barred by sovereign immunity. Although the complaint purported to be addressed to individual

board members, the suit essentially is one against the board itself and is thus, in reality, an action against the state: "[W]here a state official has been sued concerning some matter in which he represents the state and the state, though not a named defendant, is the real party against whom relief is sought, so that the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability, the suit is, in effect, one against the state . . . ." *Anderson* v. *Argraves,* 146 Conn. 316, 320, 150 A.2d 295; see *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290; *Donnelly* v. *Ives,* 159 Conn. 163, 166, 268 A.2d 406; *Murphy* v. *Ives,* 151 Conn. 259, 262, 196 A.2d 596; *Somers* v. *Hill,* 143 Conn. 476, 479–80, 123 A.2d 468; *State* v. *Aetna Casualty & Surety Co.,* 138 Conn. 363, 367–68, 84 A.2d 683. Notwithstanding the character of the suit, however, the plaintiffs contend that (1) the doctrine of sovereign immunity is an outdated concept of dubious historical legitimacy, entitled to no continuing validity and (2) a constitutional claim against the state of denial of due process is not barred by the doctrine of sovereign immunity. As to the first proposition, we have continually expressed our reluctance to abolish by judicial fiat the doctrine of sovereign immunity: "The question whether the principles of governmental immunity from suit and liability can best serve this and succeeding generations has become, by force of the long and firm establishment of these principles as precedent, a matter for legislative, not judicial, determination." *Bergner* v. *State,* 144 Conn. 282, 286, 130 A.2d 293. The basis of the doctrine was early established in our jurisprudence; *State* v. *Anderson,* 82 Conn. 392, 394, 73 A. 751; *State* v. *Kilburn,* 81 Conn. 9, 11, 69 A. 1028; and our present

disinclination to judicially overrule sovereign immunity remains unabated. See *Comba* v. *Ridgefield,* 177 Conn. 268, 272, 413 A.2d 859; *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2d 307; *Fidelity Bank* v. *State,* 166 Conn. 251, 253, 348 A.2d 633; *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290; *Tuckel* v. *Argraves,* 148 Conn. 355, 357, 170 A.2d 895; cf. *State* v. *Chapman,* 176 Conn. 362, 407 A.2d 987.

The plaintiffs' second contention—that a claim that the state is acting unconstitutionally is not barred by the defense of sovereign immunity—has, in certain cases, been approved by this court. The rationale underlying those cases is, however, absent from the present case. In *Textron, Inc.* v. *Wood,* 167 Conn. 334, 355 A.2d 307, and *Horton* v. *Meskill,* 172 Conn. 615, 376 A.2d 359, we held that *declaratory judgment* actions against officers of the state were not barred by the doctrine of sovereign immunity, reasoning that, in those cases, the plaintiff was neither attempting to *"control the activities of the state"; Textron, Inc.* v. *Wood,* supra, 340; nor "demanding any affirmative or coercive relief against the state or any of its officials." Id., 341. In *Textron,* we held further that the doctrine of sovereign immunity was not, in any event, available to the state as a defense to claims for just compensation arising under article first § 11, of the Connecticut constitution. Id., 342. In *Horton* v. *Meskill,* supra, after first stating our long-standing adherence to the principle of sovereign immunity; id., 623; we observed that in many cases consideration had been given to the merits of appeals in actions

where state officials had been parties. Significantly, all of the cases cited were declaratory judgment actions.[1]

In *Horton* v. *Meskill,* supra, the plaintiff sought only a declaratory judgment, and other prospective equitable relief, determining whether the Connecticut educational finance system, as it existed in 1974, violated select provisions of the state and federal constitutions. Id., 618. The court noted that, with a declaratory judgment, the appropriate remedy could be tailored in order to avoid any serious interference with the performance by coordinate governmental branches of their functions and with their control over their respective instrumentalities, funds and property. Id., 628; see Block, "Suits Against Government Officers and the Sovereign Immunity Doctrine," 59 Harv. L. Rev. 1060, 1061.

---

[1] See *Gentile* v. *Altermatt,* 169 Conn. 267, 363 A.2d 1 (concerning the constitutionality of the no-fault automobile insurance act); *Lublin* v. *Brown,* 168 Conn. 212, 362 A.2d 769 (concerning the constitutionality of the occupational tax levied on attorneys); *Thibeault* v. *White,* 168 Conn. 112, 358 A.2d 358 (concerning the interpretation of a public assistance statute); *Textron, Inc.* v. *Wood,* 167 Conn. 334, 355 A.2d 307 (concerning the constitutional taking of property); *Bridgeport* v. *Agostinelli,* 163 Conn. 537, 316 A.2d 371 (concerning the rights of cities and towns to proportionate shares of legislative appropriations for educational purposes); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 291 A.2d 721 (concerning the respective powers of two state regulatory commissions); *Adams* v. *Rubinow,* 157 Conn. 150, 251 A.2d 49 (concerning the constitutionality of an act providing for the administration of the Probate Court system); *Knights of Columbus Council No. 3884* v. *Mulcahy,* 154 Conn. 583, 227 A.2d 413 (concerning the constitutionality of a statute regarding the playing of bingo); *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 217 A.2d 698 (concerning the constitutionality of an act regarding the establishment of rates of insurance); *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 61 A.2d 89 (concerning the validity and construction of the 1935 Corporation Business Tax Act); *Lyman* v. *Adorno,* 133 Conn. 511, 52 A.2d 702 (concerning the constitutionality of a bonus to veterans).

A further factor—that a holding against the plaintiff in *Horton* on sovereign immunity grounds would foreclose proper judicial determination of a significant and substantial constitutional question, the determination of which was clearly in the interests of all of the people of the state—was manifestly present in the case. The authority of *Horton* and *Textron*, in sum, does not extend beyond suits for declaratory judgments alleging unconstitutional activity on the part of state officials.

In contrast, the present plaintiffs did not seek declaratory relief. They sought, rather, a mandatory injunction reinstating them to their former positions, damages in the amount of any lost wages, costs[2] and counsel fees. We have specifically held that unless the state consents to suit, an action for injunctive relief will not lie against the state. *Somers* v. *Hill*, 143 Conn. 476, 480, 123 A.2d 468. An award of damages in the form of lost wages or back pay would ineluctably have the effect of "controlling the activities of the state"; *Textron, Inc.* v. *Wood*, supra; by requiring the defendant board to expend, from the public treasury, funds for the plaintiffs' salaries. Reinstatement of the plaintiffs to their former positions would not, as in *Textron* and *Horton*, merely have the effect of declaring the rights of the parties, but would control the activities of the defendant board, and thus the state, in the administration of the educational system at Eastern Connecticut State College.

[2] In a cause of action against the state relating to the governmental function of providing education; *Stolberg* v. *Caldwell*, 175 Conn. 586, 598–99, 402 A.2d 763; *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 573, 295 A.2d 526; in the absence of specific statutory authority, the plaintiffs were precluded from recovering costs against the state. *State* v. *Chapman*, 176 Conn. 362, 364–65, 407 A.2d 987; *State* v. *Shelton*, 47 Conn. 400, 405.

The virtual array of remedies sought by the plaintiffs thus removes their claims beyond the permissible limits of the actions against the state recognized in *Textron, Inc.* v. *Wood* and *Horton* v. *Meskill.* The trial court correctly concluded that the plaintiffs' action could not lie against the state.

There is no error.

In this opinion the other judges concurred.