[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULINGS ON CROSS MOTIONS FOR SUMMARY JUDGMENTS
By cross motions for summary judgment the parties agree that there are no genuine issues of material fact and seek opposite judgments without proceeding to trial. The plaintiff seeks a decree of specific performance of a purchase option, and the defendant seeks a finding that the purchase option is not binding upon it.
Procedural Background
The plaintiff ("State") initiated this action against the defendant ("Lex") in December 1991. By Stipulation Regarding Procedure dated July 11, 1996, the parties agreed to proceed to judgment on the Third Amended Complaint dated July 11, 1996, and the Answer to Third Amended Complaint, Special Defenses and Counterclaim dated July 11, 1996. The Stipulation further provides that the sole issue of the cross motions for summary judgment is the "validity and enforceability of the purchase option in the Lease dated August 2, 1969 by and between the plaintiff and Alco Development Corporation of Vernon, predecessor in interest to the defendant, as amended by a Lease Amendment dated as of December 5, 1980."
Under P.B. § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarez v. Dickmont Plastics Corp., 229 Conn. 99,105 (1994).
Factual Background
By Stipulation of Facts dated July 11, 1996, the parties propose that there is no genuine issue as to any material fact regarding the dispositive issue of this action.
The dispute is over the lease of 69 Brooklyn Street, Vernon, which houses the Tolland Judicial District courthouse. Under the CT Page 5817 statutory authority found in C.G.S. § 51-187b, as amended by P.A. 67-112, the State and Alco Development Corporation of Vernon entered into the lease on August 22, 1969. On November 11, 1972, the premises were conveyed to Alco's president, Val Prevedini, and on December 15, 1972, Val Prevedini conveyed the premise to the defendant Lex. On December 5, 1980, the parties entered into an amendment of the lease.
On August 15, 1990, the plaintiff advised the defendant of its intent to exercise the purchase option in the lease. At the closing date, October 15, 1990, the plaintiff was present at the specified location and ready, willing and able to purchase the premise for $395,000. A representative of the plaintiff had in his possession a draft in the amount of $395,000 and made payable to the defendant. The defendant did not appear at the closing. The defendant has not conveyed the premise to the plaintiff.
Discussion
 Plaintiff's Motion for Summary Judgment
The plaintiff claims it is entitled to judgment as a matter of law because it has performed its obligations under the lease to validly exercise the purchase option. Paragraph ten of the lease as amended by the Lease amendment of December 5, 1980, sets forth the purchase option, providing in part,
 The lessor hereby grants to the Lessee the right, at Lessee's option, to purchase the demise premises, along with all structures, improvements, and equipment thereon, free and clear of all liens and encumbrances at the following periods, and at the following sums:
 (a) At the end of the calendar year of December 31, 1989, for the sum of $395,000.
 (b) At the end of the calendar year of December 31, 1994, for the sum of $175,000.
 (c) At the end of the calendar year of December 31, 1999, for the sum of $145,000.
The lease provision then sets forth the procedure for exercising the option. Based upon the stipulation of facts, it is clear that there is no issue of fact as to the language of the purchase CT Page 5818 option or as to the plaintiff's compliance with the procedures under the lease to exercise that option.
The plaintiff contends it is thus entitled to specific performance of the purchase option. In an action for specific performance, it is the plaintiff's burden to prove that it is ready, willing and able to perform its obligations for the exercise of the purchase option. Frumento v. Mezzanote, 192 Conn. 606,616 (1984). This burden continues even if the defendant refuses to participate in the closing. 192 Conn. At 616. Further, since this action is one brought in equity, it is the plaintiff's burden to show its right in equity and good conscience to the relief sought. Cutter Development Corporation v. Peluso,212 Conn. 107, 114-115 (1989).
The court finds that the plaintiff has met its burden to show that it has met its obligations of performance under the purchase option contained in the lease. As to its latter burden to show its right in equity, the court will defer that to its discussion of the defendant's claims.
Defendant's Motion for Summary Judgment
The defendant argues that it is entitled to judgment as a matter of law because the purchase option is not binding upon it. Specifically, the defendant claims that because of the court's dismissal of a summary process action between the parties in 1979 the lease between the parties is nudum pactum.[1]
In Lex Associates v. State of Connecticut, 35 Conn. Sup. 180
(1979), the court granted the state's motion to dismiss because of sovereign immunity. Lex brought the action under C.G.S. §47a-23 seeking possession for the State's default under the lease, specifically, nonpayment of rent. The state filed a motion to dismiss claiming that it was immune from suit. The court granted the motion to dismiss for the following reasons:
 The court, therefore, cannot find that there has been a taking of the plaintiff's property in the constitutional sense, nor can it find that the legislature by express wording has authorized a suit against the state, nor can it find that the wording of § 4-128 by necessary implication waives governmental immunity.
The court, therefore, finds that the defense of governmental CT Page 5819 immunity is applicable in this matter and the motion to dismiss the action in summary process is granted.
35 Conn. Sup. At 186.;
In the present action, Lex argues that 1) this prior ruling "holds conclusively that the defendant cannot enforce the State's obligation under the Lease," (Memorandum p. 12); and accordingly, 2) the lease lacks mutuality. It is the State's position that this ruling does not address the obligations under the lease but simply the State's immunity from a summary process action.
Because the court disagrees with Lex's first premise, it does not address the second. The claim that the defendant cannot enforce the state's obligation under the lease is based upon the dismissal of the summary process action on the grounds of sovereign immunity. Because Lex does (and did in 1979) have a remedy to enforce the state's obligations under the lease through the Commissioner of Claims, this claim must fail. It is clear that Lex did not seek permission from the Commissioner of Claims to bring the 1979 summary process action against the State.
In Doe v. Heintz, 204 Conn. Conn. 17 (1987), the Supreme Court reversed an award of attorney's fees against the state because the plaintiffs had not exhausted their administrative remedies by first proceeding through the Commissioner of Claims. The reasoning in Doe explains why Lex's argument fails here.
 In implementing article eleventh, 4,[14] of our state constitution, the legislature has established a tribunal, the claims commissioner, for the adjudication of claims against the state where monetary relief is sought. General Statutes 4-141, 4-142, Hirschfeld v. Commission on Claims, 172 Conn. 603, 604, 376 A.2d 71 (1977). The claims commissioner is authorized to "approve immediate payment of just claims not exceeding [$7500]." General Statutes 4-158. For claims greater than that sum, the claims commissioner must recommend their payment or rejection to the general assembly which "may accept, alter or reject any such recommendation" General Statutes 4-159. The claims commissioner also, when he "deems it just and equitable," may effectively waive the state's sovereign immunity by authorizing suit "on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes 4-160 (a). This legislation CT Page 5820 expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the commissioner or other statutory provisions. General Statutes 4-148(b), 4-160.
* * *
 "Since we are not aware of any legal barrier to the presentation of the plaintiff's claim to the commissioner or to his favorable action upon it, we cannot assume that recourse to that procedure would necessarily have been futile or inadequate." Sullivan v. State, supra, 559. The failure of the plaintiffs to pursue this administrative remedy precludes an adjudication of the constitutional claim they have raised. Id. No determination of whether a constitutional necessity exists that would supersede the state's sovereign immunity can be made when the alternative procedure available through the claims commissioner, which might have provided the relief sought, has been ignored. Id.; see Holt-Lock, Inc. v. Zoning Planning Commission, 161 Conn. 182, 186, 286 A.2d 299 (1971) We conclude that the trial court should have dismissed the plaintiffs' claim for attorneys' fees.
204 Conn. at 35-36. [Emphasis added]
Likewise, Lex cannot claim successfully that the lease is unenforceable against the state when there was and is an alternative procedure through the claims commissioner. It does not claim there is or was any "legal barrier" to the presentation of its claims arising out of the lease, and in fact a claim is now pending before the Commissioner of Claims for permission to evict the state from the premises. Nevertheless, Lex argues that the claim procedure is futile because of the unfettered discretion of the Claims Commissioner. The Doe decision dispenses with that argument. In 1979, when the court dismissed the summary process action on the grounds of sovereign immunity, Lex had not exhausted the administrative remedies available to it to enforce the lease. Within the statute allowing the Claims Commissioner to authorize actions against the state is an express waiver of sovereign immunity once the commissioner has granted permission to sue.[2] The ruling in Lex Associates v. State ofConnecticut, supra did not effect a nudum pactum.
CT Page 5821
Moreover, one year after the court dismissed the summary process action, the parties entered into an amended lease. Such conduct does not support the defendant's present position that the lease became nudum pactum. It is upon this fact as well as the preceding legal discussion that the court finds that the plaintiff has shown its right in equity to specific performance so that the purchase option is binding upon the defendant.[3]
The plaintiff's Motion for Summary Judgment is granted, and the Defendant's Motion is denied. Accordingly, the court enters a decree of specific performance that the defendant convey the premises to the plaintiff. A hearing shall be held 1) to determine the price to be paid by the plaintiff for the premises pursuant to ¶ 10 of the Lease, 2) to determine if the plaintiff is permitted to set off payments to the defendant denominated as rent from October 15, 1990 to the present against the option price for the property, and 3) to determine if the defendant is entitled to the reasonable value of the plaintiff's use and occupancy of the premises during that period of time the plaintiff has occupied the premises without compensating the defendant for such occupancy.
Alexandra Davis DiPentima, Judge